UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                           :

HISAMI ABE, *on behalf of herself and others similarly*  :
*situated*,
                                           :

                        Plaintiff,        :               20 Civ. 9725 (JPC)
                                           :

            -v-                      :         OPINION AND ORDER
                                         :

UEZU CORPORATION *et al.*,                 :
                                           :

                      Defendants.       :
                                         :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiffs are servers who worked at Kurumazushi, a sushi restaurant in midtown Manhattan. They have brought this suit against the alleged corporate operator and individual owners of that restaurant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq.*, alleging failure to pay the minimum wage, failure to make spread-of-hours pay, misappropriation of tips, and wage statement and notice violations. Plaintiffs have now moved for partial summary judgment on the questions of whether each Defendant was Plaintiffs' employer under federal and state law and whether Defendants are entitled to tip credit against Plaintiffs' wages when determining whether they were paid the minimum wage. For the reasons that follow, the Court grants Plaintiffs' motion for partial summary judgment nearly in full, except denies the motion as to the question of whether one Defendant, Toshihiro Uezu, qualifies as Plaintiffs' employer under the FLSA and the NYLL.

# I.  Background

**A.   Facts**[1]

Defendants Toshihiro Uezu ("Mr. Uezu") and Kumiko Uezu ("Mrs. Uezu") are the sole, equal co-owners of Defendant Uezu Corporation.  Defts. Counter 56.1 Stmt. ¶¶ 4, 16.  Uezu Corporation operates Kurumazushi, a sushi restaurant on West 47th Street in Manhattan.  *Id.* ¶ 28; *see also* Answer ¶ 8; Compl. ¶ 8.

At all times relevant to this case, Mr. and Mrs. Uezu served as treasurer and president, respectively, of Uezu Corporation, as well as the company's sole directors.  Defts. Counter 56.1 Stmt. ¶¶ 5-6, 17-18.  They both also worked at Kurumazushi, Mr. Uezu as the head sushi chef and Mrs. Uezu as the head server.  Mr. Uezu Decl. ¶ 7; Mrs. Uezu Decl. ¶¶ 8, 10; *see also* Defts. Add'l Stmt. ¶¶ 2, 4.  As part of her duties as head server, Mrs. Uezu greeted customers, served them food and drinks, and cleared tables.  Mrs. Uezu Decl. ¶ 10; *see also* Defts. Add'l Stmt. ¶ 4.  Mrs. Uezu also interviewed and hired new servers and prepared their wage notices,[2] determined servers' schedules and pay rates, and maintained employee records.  Defts. Counter 56.1 Stmt. ¶¶ 9-10, 12-14.  Mr. Uezu interviewed and hired new sushi chefs, whom he also trained and supervised, and determined their schedules and pay rates.  *Id.* ¶¶ 20, 22, 24-25.  Mr. and Mrs. Uezu each had

---

[1] The following facts are drawn primarily from Plaintiffs' statement of material facts under Local Civil Rule 56.1, Dkt. 53 ("Pls. 56.1 Stmt."), Defendants' counter-statement under Rule 56.1, Dkt. 59 at 1-19 ("Defts. Counter 56.1 Stmt."), Defendants' statement of additional disputed material facts, Dkt. 59 at 19-21 ("Defts. Add'l Stmt."), the exhibits filed by the parties including the declarations from Toshihiro Uezu, Dkt. 58 ("Mr. Uezu Decl."), and Kumiko Uezu, Dkt. 57 ("Mrs. Uezu Decl."), and the allegations admitted by Defendants in their Answer, Dkt. 15 ("Answer"), to the Complaint, Dkt. 1 ("Compl.").  Unless otherwise noted, for facts first raised in Plaintiffs' Rule 56.1 statement, the Court cites only to Defendants' Rule 56.1 counter-statement when the parties do not dispute the fact, Defendants have not offered admissible evidence to refute that fact, or Defendants simply seek to add their own "spin" on the fact or otherwise dispute the inferences from the stated fact.

[2] While the wage notices listed Mr. Uezu as the signatory and preparer, the notices were in fact prepared by Mrs. Uezu and Hideki Takao.  Defts. Counter 56.1 Stmt. ¶ 10.

"general knowledge" of Uezu's "employment practices[,] . . . including its employee pay policies and practices."  *Id.* ¶¶ 3, 15.  Both also were "generally responsible" for "managing," "hiring, firing, and disciplining employees of Uezu."  *Id.* ¶¶ 7-8, 11, 19, 21, 23.  Mrs. Uezu exercised her "authority" to hire Uezu employees with respect to servers, while Mr. Uezu exercised his authority to do the same with respect to sushi chefs.  *Id.* ¶¶ 9, 22.

Plaintiffs Hisami Abe and Maromi Martinez worked as servers at Kurumazushi.  *Id.* ¶¶ 1, 26.  Abe worked at the restaurant for approximately one month in 2020, while Martinez worked there for approximately four years, from 2017 through July 2021.  Defts. Add'l Stmt. ¶¶ 11-12.  Restaurant employees, including Plaintiffs as well as sushi chefs working at the sushi bar, shared in a tip pool, and Mr. and Mrs. Uezu also took some of the money from this tip pool for themselves.  Defts. Counter 56.1 Stmt. ¶ 32; Defts. Add'l Stmt.  ¶ 8.  Plaintiffs allege that Defendants took tip credits when calculating their hourly wages.  Defts. Counter 56.1 Stmt. ¶¶ 29-30.  According to Mrs. Uezu, the restaurant displayed posters concerning minimum wages and employee rights, and if a tip credit was taken against an employee's wages, that employee was informed of the tip credit and signed a wage notice.  Mrs. Uezu Decl. ¶¶ 5-6; *see also* Defts. Add'l Stmt. ¶ 6.[3]

---

[3] Several facts are disputed in the parties' Rule 56.1 statements, but are not material to deciding this motion.  *See, e.g.*, Defts. Counter 56.1 Stmt. ¶¶ 10 (Defendants denying Plaintiffs' suggestion that a third party, Takao, provided advice on how to comply with the labor laws); 27 (Defendants denying that, at the relevant time, Uezu Corporation had more than ten employees); 29-30 (Defendants disputing the alleged full hourly rates received by Plaintiffs); 31 (Defendants denying that thirty percent of the servers' tips, including those received by Plaintiffs, went to kitchen staff who had little or no customer contact); *see also* Defts. Add'l Stmt. ¶¶ 1-2, 9-1 (maintaining that the sushi chefs, including Mr. Uezu, "primarily" prepared sushi in front of customers at the sushi bar and sometimes for customers at tables, only "occasionally" entering the kitchen to retrieve sushi ingredients).

**B.**      **Procedural History**

Abe initiated this action on behalf of herself and others similarly situated on November 18, 2020.  The Complaint includes six causes of action under federal and state law: (1) failure to pay minimum wage in violation of the NYLL, Compl. ¶¶ 62-73; (2) misappropriation of tips in violation of the FLSA, *id.* ¶¶ 74-81; (3) misappropriation of tips in violation of the NYLL, *id.* ¶¶ 82-90; (4) failure to pay spread-of-hours pay in violation of the NYLL, *id.* ¶¶ 91-95; (5) failure to provide wage notice in violation of the NYLL, *id.* ¶¶ 96-100; and (6) failure to provide wage statements in violation of the NYLL, *id.* ¶¶ 101-04.  The Court referred this action for mediation, Dkt. 14, but mediation failed to resolve the matter, Dkt. 16.

On June 18, 2021, Abe moved to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and a collective under the FLSA.  Dkt. 22.  Pursuant to section 216(b) of the FLSA and the consent of the parties, on September 7, 2021, the Court conditionally certified the matter as an FLSA collective action and detailed the procedures for adding potential opt-in plaintiffs to the lawsuit.  Dkt. 33.  Martinez joined the action as a party plaintiff on November 12, 2021.  Dkts. 36-37.  On June 8, 2022, Plaintiffs moved for partial summary judgment.  Dkts. 51-53, 54 ("Motion").  Defendants filed their opposition on June 29, 2022, Dkts. 55 ("Opposition"), 56-59, and Plaintiffs filed their reply on July 6, 2022, Dkt. 60 ("Reply").

## II.  Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW),

2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008) (citing *Anderson*, 477 U.S. at 255).

A summary judgment "movant bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *Chen*, 2019 WL 1244291, at *2 (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)). The burden then shifts to the non-movant, who to defeat a motion for summary judgment "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The non-movant 'may not rely on conclusory allegations or unsubstantiated speculation,' and 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *De Jesus v. Oyshi Table Corp.*, No. 19 Civ. 830 (JPC), 2021 WL 638270, at *2 (S.D.N.Y. Feb. 17, 2021) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* (alterations in original) (quoting *Anderson*, 477 U.S. at 252). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id.* (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).

### III.  Discussion

Plaintiffs' motion for partial summary judgment raises two questions. First, are Plaintiffs entitled to a summary judgment holding, as a matter of law, that any Defendant qualifies as being

their employer for purposes of liability under the FLSA and the NYLL?  Second, are Plaintiffs

entitled to a summary judgment holding, as a matter of law, that Defendants are not entitled to a

tip credit against Plaintiffs' wages for purposes of calculating whether they were paid the minimum

wage under the FLSA and the NYLL?

## A.      Whether Each of Defendants Was Plaintiffs' Employer

Under the FLSA, an "'[e]mployer' includes any person acting directly or indirectly in the

interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  A "'person' means an

individual, partnership, association, corporation, business trust, legal representative, or any

organized group of persons." *Id.* § 203(a).  The employer definition "is necessarily a broad one,

in accordance with the remedial purpose of the FLSA." *Zheng v. Liberty Apparel Co.*, 355 F.3d

61, 66 (2d Cir. 2003) (citing *United States v. Rosenwasser*, 323 U.S. 360, 363 & n.3 (1945); *Brock

v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988)).  The NYLL defines "employer" as "any

individual, partnership, association, corporation, limited liability company, business trust, legal

representative, or any organized group of persons acting as employer." N.Y. Lab. L. § 651(6)

(Consol. 2023).  While the text of the definitions are not identical, "courts have interpreted the

definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."

*Galvez v. 800 Ginza Sushi Inc.*, No. 19 Civ. 8549 (JPC), 2022 WL 748286, at *7 (S.D.N.Y. Mar.

11, 2022) (alteration in original) (quoting *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13

(S.D.N.Y. 2010)).

"[T]he determination of whether an employer-employee relationship exists"—and

therefore whether an individual is an "employer" under the FLSA and the NYLL—is "grounded

in 'economic reality rather than technical concepts.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*,

537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28,

33 (1961)).  Courts must consider "the totality of the circumstances." *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013)). The dispositive question is "whether the individual possessed operational control over employees: 'control over a company's actual "operations" in a manner that relates to a plaintiff's employment.'" *Id.* (quoting *Irizarry*, 722 F.3d at 109).  "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* (quoting *Irizarry*, 722 F.3d at 110). "Although this does not mean that the individual 'employer' must be responsible for managing plaintiff employees—or, indeed, that he or she must have directly come into contact with the plaintiffs, their workplaces, or their schedules—the relationship between the individual's operational function and the plaintiffs' employment must be closer in degree than simple [but-for] causation." *Irizarry*, 722 F.3d at 110.

The factors outlined by the Second Circuit in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984), "are often relevant" to the determination of whether an individual is an employer. *Tapia*, 906 F.3d at 61.  Those factors are "[w]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (alteration in original) (quoting *Barfield*, 537 F.3d at 142).  "No one of the four factors standing alone is dispositive." *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).  Furthermore, "while satisfaction of the four factors in *Carter* can be sufficient to establish employment status, . . . a positive finding on [all] four factors is [not] necessary to establish an employment relationship." *Barfield*, 537 F.3d at 143 (internal quotation marks, emphasis, and brackets omitted) (quoting *Zheng*, 355 F.3d at 69).  And again, ultimately,

"the 'overarching concern [is] whether the alleged employer possessed the power to control the workers in question.'"  *Irizarry*, 722 F.3d at 105 (quoting *RSR*, 172 F.3d at 139).

### 1. Whether Uezu Corporation Was Plaintiffs' Employer

As Defendants concede, there is no genuine issue of material fact on the question of whether Uezu Corporation was Plaintiffs' employer under the FLSA and the NYLL.  *See* Opposition at 5 ("Defendants concede that Uezu Corp. was Plaintiffs' employer . . . ."); *see also* Answer ¶ 7 (admitting that Abe "was employed by Uezu Corp. from approximately January 6, 2020 through approximately February 6, 2020"); Defts. 56.1 Counter Stmt. ¶¶ 1-2 (admitting that Uezu Corporation held itself out as Plaintiffs' employer).  Therefore, the Court grants Plaintiffs' motion for partial summary judgment on this issue and holds that Uezu Corporation was Plaintiffs' employer for purposes of the FLSA and the NYLL.

### 2. Whether Mrs. Uezu Was Plaintiffs' Employer

There also is no genuine issue of material fact as to whether Mrs. Uezu was Plaintiffs' employer under the FLSA and the NYLL.  With respect to the first *Carter* factor, Mrs. Uezu had the power to hire and fire Plaintiffs in their roles as servers.  *See Tapia*, 906 F.3d at 61.  She was "generally responsible" for "managing," including "hiring, firing, and disciplining employees of Uezu."  Defts. Counter 56.1 Stmt. ¶¶ 7-8, 11.  More significantly, she exercised this "authority" to hire new servers, and prepared wage notices for those new servers.  *Id.* ¶ 9.  In addition, while Mrs. Uezu had the authority to fire employees at Kurumazushi, she explained at her deposition that usually employees were the ones who wished to quit, and she would ask them to give two weeks' notice before leaving.  Dkt. 52-7 ("Mrs. Uezu Dep.") at 58:21-59:5; *see* Defts. 56.1 Stmt. ¶ 11.  As to the second *Carter* factor, Mrs. Uezu supervised and controlled the servers' work schedules and certain conditions of employment, as she decided their "working days, start times, and end times," Defts. Counter 56.1 Stmt. ¶ 12, and prepared their wage notices, *id.* ¶¶ 9-10.  *See Tapia*, 906 F.3d

at 61.  Mrs. Uezu satisfied the third and fourth *Carter* factors as well.  She determined the servers'
wage rates and maintained employment records on behalf of Uezu Corporation.  Defts. Counter
56.1 Stmt. ¶¶ 13-14; *see Tapia*, 906 F.3d at 61.

Faced with this overwhelming and uncontroverted evidence of Mrs. Uezu's status as
Plaintiffs' employer, Defendants argue that Plaintiffs have failed to come forward with evidence
that Mrs. Uezu met the *Carter* factors *specifically* in relation to them.  *See* Opposition at 8-13.
This argument belies the undisputed evidence in the record and is not "grounded in 'economic
reality.'"  *Barfield*, 537 F.3d at 141 (quoting *Goldberg*, 366 U.S. at 33).  Defendants do not dispute
that Plaintiffs were servers at Kurumazushi, a restaurant for which Mrs. Uezu was a fifty percent
owner and one of two directors.  Defts. Counter 56.1 Stmt. ¶¶ 5-6, 26.  Nor is there any dispute
that Mrs. Uezu possessed broad powers and control over the servers at that restaurant, and
exercised that power by hiring servers, setting their work schedules, preparing their wage notices,
determining their pay rates, and maintaining their employment records, as discussed above.[4]  The
only reasonable conclusion to follow from these undisputed facts is that Mrs. Uezu had that control
over Plaintiffs as servers at the restaurant.  Mrs. Uezu therefore was their employer for purposes
of the FLSA and the NYLL, *see Irizarry*, 722 F.3d at 105 (quoting *RSR*, 172 F.3d at 139), and
Plaintiffs are entitled to summary judgment on that issue.

---

[4] The primary areas of factual dispute in this case appear to have nothing to do with whether
Mrs. Uezu was Plaintiffs' employers.  For instance, the parties dispute Takao's role at the
restaurant, Mr. Uezu's responsibilities as to the servers, the primary work location of the sushi
chefs, the number of employees at Uezu Corporation, and the wages paid to Plaintiffs.  *See, e.g.*,
Defts. Add'l 56.1 Stmt. ¶¶ 1-2, 9-10, 27; Reply at 4, 9-10.  None of these disputed facts are material
to whether Mrs. Uezu possessed the requisite operational control over Plaintiffs.

### 3.      Whether Mr. Uezu Was Plaintiffs' Employer

A genuine issue of material fact does exist, however, with respect to whether Mr. Uezu exercised the requisite control over Plaintiffs to render him their employer under the FLSA and the NYLL.  Unlike his wife, Mr. Uezu does not clearly satisfy any of the four *Carter* factors *as to Plaintiffs*.  While like Mrs. Uezu, Mr. Uezu was "generally responsible" for "managing," "hiring, firing, and disciplining employees of Uezu Corp.," Defts. Counter 56.1 Stmt. ¶¶ 19, 21, there is factual dispute as to whether he in fact exercised such authority with respect to servers like Plaintiffs, *see id.* ¶ 22 (disputing that Mr. Uezu had the authority and exercised it to hire and interview servers at the restaurant).  Rather, the undisputed evidence is that Mr. Uezu exercised such authority with respect to Kurumazushi's sushi chefs and kitchen workers.  *Id.*  When asked at his deposition whether he was "in charge of interviewing and hiring kitchen people and sushi chefs," with "somebody else . . . in charge of hiring everybody else," Mr. Uezu responded, "That is correct, I am not involved in the others."  Dkt. 52-8 at 19:23-20:6.  He similarly averred in his declaration:  "I do not manage, hire, fire, or direct any of the Restaurant's servers.  I am also not responsible for setting their schedules, determining their pay, overseeing their work or keeping and maintaining any of the servers' employment information."  Mr. Uezu Decl. ¶ 13.  He further denied ever "supervis[ing] or manag[ing] the Plaintiffs," or "determin[ing] the Plaintiffs' rates or methods of pay."  *Id.* ¶ 14.  Similarly, the undisputed evidence is that Mr. Uezu trained, supervised, and determined the pay rates and schedules of sushi chefs, Defts. 56.1 Stmt. ¶¶ 20, 24-25, but not that he did so for the restaurant's servers.  Nor is there evidence that Mr. Uezu maintained employee records.  *See* Motion at 19-20 (acknowledging that there is no evidence that Mr. Uezu was involved in record-keeping); *see also* Defts. Counter 56.1 Stmt. ¶ 14 (admitting that Mrs. Uezu kept and maintained employee records on behalf of Uezu Corporation).

Plaintiffs suggest that the only reasonable conclusion to draw from Mr. Uezu's general authority within Uezu and his specific exercise of that authority over sushi chefs is that Mr. Uezu had "general power to hire, fire, and discipline, schedule, and set the pay of [all] employees," including servers, but chose not to exercise such authority with regard to servers.  Reply at 6-7.  There are two flaws with this argument, one of fact and one of law.

As a factual matter, it is unclear from the undisputed facts that Mr. Uezu's actual authority extended to servers.  From the evidence presented, it is conceivable that a reasonable jury could find that it did not.  Such a finding would proceed logically as follows:  Mr. Uezu's authority had general responsibility over "employees," but he did not exercise his authority over *all* employees.  Defts. Counter 56.1 Stmt. ¶¶ 19, 21.  Mr. Uezu exercised that authority only over sushi chefs.  *See id.* ¶¶ 20, 22, 24-25.  Mrs. Uezu, on the other hand, was responsible for managing the restaurant's servers and, as such, was the one who exercised such authority over the servers like Plaintiffs.  *Id.* ¶¶ 9, 12-14.   In operating their restaurant, Mr. and Mrs. Uezu had a strictly delineated apportionment of authority between servers and sushi chefs.  Mr. Uezu therefore exercised authority over some, but not all, employees—*i.e.*, only over sushi chefs but not over employees like Plaintiffs.  Viewed in this light, Plaintiffs' reading is not the only possible reasonable interpretation of the facts.

The question therefore becomes whether Mr. Uezu's general responsibility over the restaurant's employees, even if unexercised as to Plaintiffs, rendered him Plaintiffs' employer as a matter of law.  But the "employer" determination eschews formalistic analysis in favor of "a case-by-case . . . review of the totality of the circumstances."  *Irizarry*, 722 F.3d at 104 (quoting *Barfield*, 537 F.3d at 141-42); *see also Barfield*, 533 F.3d at 141 (noting that the employer determination is based on "economic reality," not "technical concepts" (quoting *Goldberg*, 366

U.S. at 33)); *Carter*, 735 F.2d at 12 (declining to find "ultimate" control as dispositive but rather asking "who exercises substantial control over a worker"). And Mr. Uezu's co-ownership of Uezu Corporation, along with his position as a director and an officer of the corporation, is not sufficient by itself to establish his status as Plaintiffs' employer. *Irizarry*, 722 F.3d at 109 ("Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status."); *accord Brito v. Lucky Seven Rest. & Bar LLC*, No. 19 Civ. 3876 (PAE) (KHP), 2020 WL 6972527, at *4 (S.D.N.Y. July 31, 2020) ("[M]ere ownership interest is insufficient to establish an individual's status as an employer."), *report and recommendation adopted in relevant part and rejected in part by* 2021 WL 1131506 (S.D.N.Y. Mar. 24, 2021); *Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 WL 4147241, at *6 (S.D.N.Y. Aug. 3, 2016) ("Generally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedules or tasks, signing the employee's paycheck or directly hiring the employees." (quotations omitted)). The undisputed facts simply do not allow for the conclusion, as a matter of law, that Mr. Uezu was Plaintiffs' employer for purposes of the FLSA and the NYLL.

To be sure, the evidence may allow the jury to reach that conclusion. For instance, there is evidence that "[Mr.] Uezu was generally responsible for managing employees of Uezu Corp.," Defts. Counter 56.1 Stmt. ¶ 19, that he "was generally responsible for hiring, firing, and disciplining employees of Uezu Corp.," *id.* ¶ 21, and that he "had the authority to fire employees of Uezu Corp.," *id.* ¶ 23. But taken together, the evidence presented by Mr. Uezu on this issue, as discussed above, is not "so slight" that "no rational finder of fact could find" that he was not

Plaintiffs' employer.  *De Jesus*, 2021 WL 638270, at \*2 (quoting *Eli Lilly & Co.*, 654 F.3d at 358).
Ultimately, that question is for the jury to decide, and the Court denies Plaintiffs' motion as to
whether Mr. Uezu was Plaintiffs' employer under the FLSA and the NYLL.

* * *

Accordingly, the Court grants Plaintiffs' motion for summary judgment as to the employer
status of Uezu Corporation and Mrs. Uezu, holding that they qualify as Plaintiffs' employers as a
matter of law under the FLSA and the NYLL.  The Court denies the motion on this issue as to Mr.
Uezu, finding that material issues of fact remain in dispute as to whether he qualifies as an
employer under those statutes.

**B.    Whether Defendants Were Entitled to Take a Tip Credit Against Plaintiffs' Minimum Wages**

The Court turns next to whether Defendants were entitled to take a tip credit against their
wages.  The FLSA and the NYLL both allow an employer to pay a tipped food service employee
below the minimum wage, provided that the wage paid plus the tips equals or exceeds the
applicable minimum wage.  *See* 29 U.S.C. § 203(m)(2); 12 N.Y. Comp. Codes R. & Regs. § 146-
1.3(b).  But under these statutes, an employer is not entitled to such a tip credit unless certain
conditions are met.  *See* 29 U.S.C. §§ 203(m), 206(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12,
§ 146-1.3(b).  The standards for lawfully retaining a tip credit differ slightly under the FLSA and
the NYLL.  The Court therefore considers each statute separately.

**1.    Tip Credit Under the FLSA**

Under the FLSA, "[a]n employer may not keep tips received by its employees for any
purposes." 29 U.S.C. § 203(m)(2)(B).  Thus, as the Second Circuit has made clear, an "employer"
is unable to share in the tips of its employees. *See Barenboim v. Starbucks Corp.*, 698 F.3d 104,
110 (2d Cir. 2012) ("[A]n 'employer' [is] ineligible to retain gratuities" (citing 29 U.S.C.

13

§ 203(m)).  "Congress gave employers of tipped employees a simple choice: either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage."  *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002); *see also Paguay v. Buona Fortuna, Inc.*, No. 11 Civ. 6266 (LTS), 2013 WL 3941088, at *3 (S.D.N.Y. July 31, 2013).  The Second Circuit further has held that an employer may not take tip credits under the FLSA "if it requires tipped employees to share their tips with employees who do not 'customarily and regularly receive tips.'"  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 239-40 (2d Cir. 2011) (quoting 29 U.S.C. § 203(m)); *accord Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 39 (E.D.N.Y. 2015) ("'[A]n employer may not avail itself of the tip credit if it requires [tipped] employees to share their tips with employees who do not customarily and regularly receive tips,' for example, managers or kitchen workers." (second alteration in original) (quoting *Fonseca v. Dircksen & Talleygrand Inc.*, No. 13 Civ. 5124 (AT), 2014 WL 1487279, at *2 (S.D.N.Y. Apr. 11, 2014))); *Paguay*, 2013 WL 3941088, at *2 (Under the FLSA, "the case law is clear that 'an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers.'" (quoting *Shahriar*, 659 F.3d at 240)).

In this case, Mrs. Uezu kept some of the money in the servers' shared tip pool.  Defts. Counter 56.1 Stmt. ¶ 32.  As discussed, the undisputed evidence establishes as a matter of law that Mrs. Uezu was Plaintiffs' employer.  *See supra* III.A.2.  She therefore was not permitted to retain for herself any of the tips received by her employees.  29 U.S.C. § 203(m)(2)(B); *accord Barenboim*, 698 F.3d at 110.  Because as an employer Mrs. Uezu could not lawfully under the FLSA share in that tip pool, it naturally follows that she was not someone who "customarily and regularly receive[d] tips," and thus Defendants are not entitled to tip credit against the wages they

14

paid Plaintiffs.  *Shahriar*, 659 F.3d at 239-40; *accord Fermin*, 93 F. Supp. 3d at 39; *Paguay*, 2013 WL 3941088, at *2.

Defendants offer no persuasive arguments to the contrary.  Citing *Hai Ming Lu v. Jing Fong Restaurant, Inc.*, 503 F. Supp. 2d 706 (S.D.N.Y. 2007), Defendants argue that "[a]n employer is permitted to take a tip credit in connection with a tip pooling arrangement if the pool includes only those employees who 'customarily and regularly receive tips.'"  Opposition at 15 (quoting *Hai Ming Lu*, 503 F. Supp. 2d at 711).  But *Hai Ming Lu* provides no support for Defendants' position.  Rather, the cited excerpts concern the question of whether certain classes of employees—in that case, transportation workers and pantry workers—that *were not employers* could share in a tip pool.  Defendants identify no authority for their assertion that *an employer* may participate in a tip pool.  This is not surprising.  As noted, Second Circuit precedent—as well as the plain language of the statute—instructs that the FLSA bars employers from retaining employees' gratuities.  *Barenboim*, 698 F.3d at 110; 29 U.S.C. § 209(m)(2)(B).  Defendants therefore are not entitled to a tip credit against Plaintiffs' wages under the FLSA.

### 2.  Tip Credit Under the NYLL

New York law similarly "prohibits employers from requiring tipped employees to share tips with non-service employees or managers."  *Shahriar*, 659 F.3d at 240 (citing N.Y. Lab. Law § 196-d).  The NYLL provides:

> No *employer* or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee.

N.Y. Labor Law § 196-d (emphasis added).

As with the FLSA, *see supra* III.B.1, Mrs. Uezu—as Plaintiffs' employer—was barred under the NYLL from "accept[ing], directly or indirectly, any part of the gratuities, received by an

15

employee, or retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee."  N.Y. Lab. Law § 196-d.  Furthermore, Mrs. Uezu testified at her deposition that servers received only a portion of the tips that they would otherwise have been entitled to, commensurate with their experience.  *See* Mrs. Uezu Dep. at 60:24-61:9 (testifying a new employee typically would receive "an hourly rate and 50 percent of the tip that they received"); *id.* at 61:16-19 (explaining that "30 percent of [the tips] goes to the kitchen [staff]"); *id.* at 61:20-62:12 (explaining that a server's tip share depended on "how long they have been working for us," noting that "the amount of tips they receive just really varies").  And again, most significantly, a portion of the tips went to Mrs. Uezu herself.  Defts. Counter 56.1 Stmt. ¶ 32.

Nor does it matter, for purposes of the NYLL, that Mrs. Uezu engaged in some traditionally tipped worked.  The language of section 196-d is clear: an employer may not accept any part of the gratuities received by an employee or otherwise retain any part of an employee's gratuities.  *See Chung*, 246 F. Supp. 2d at 229 ("[T]he practice of forced sharing of tips with management is . . . an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping."); *id.* at 230 (noting that "section 196-d clearly prohibits part-owner employees who wield such broad managerial authority . . . and who are thus clearly the 'employer[]' from sharing tips").  Defendants therefore are not entitled to a tip credit under the NYLL.

* * *

Accordingly, Plaintiffs' motion for summary judgment is granted on the tip credit issue, and the Court holds that, under both the FLSA and the NYLL, Defendants are not entitled to

receive a tip credit against the Plaintiffs' wages in calculating whether Plaintiffs were paid the appropriate minimum wage.[5]

### IV.  Conclusion

For the foregoing reasons, the Court grants Plaintiffs' motion for partial summary judgment except with respect to Mr. Uezu's employer status.  The Court holds that, as a matter of law, Uezu Corporation and Mrs. Uezu were Plaintiffs' employers for purposes of the FLSA and the NYLL, but that material facts remain in dispute as to whether Mr. Uezu was such an employer.  The Court further holds that Defendants are not entitled to receive a tip credit against Plaintiffs' wages under either the FLSA or the NYLL.

The parties are directed to appear for a status conference on April 4, 2023, at 2:30 p.m., to discuss a trial date.  The conference will take place in Courtroom 12D of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 51.

SO ORDERED.

Dated: March 18, 2023
       New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[5] Because the Court finds that Defendants are not entitled to tip credit under either the FLSA or the NYLL based on Mrs. Uezu's sharing in the tips, the Court need not reach Plaintiffs' argument that the Court should disregard Mrs. Uezu's declaration on the grounds that it contradicted her deposition testimony as to the number of employees employed at Kurumazushi. *See* Reply at 7-8, 10.